Good morning, ladies and gentlemen. Before we begin, I'd like to advise appellants, if you have reserved any time for rebuttal or wish to reserve any time for rebuttal, I'd appreciate your letting me know at the beginning of your arguments. And the clerk may call the first case. Cases 15-4844 and 15-4845. United States of America v. John Coleman. Oral argument not to exceed 15 minutes per side. Mr. Chas or the appellant. Good morning, your honors, and may it please the court. I'm here this morning representing John Coleman on a supervised release violation, and I'd like to reserve four of my minutes for rebuttal, if I may. May. Thank you, your honors. Your honors, Mr. Coleman had an attorney standing next to him at a supervised release revocation hearing, but he did not have the assistance of counsel as guaranteed by the Sixth Amendment at that hearing. Quite simply, no counsel could have effectively represented him at that hearing given the time that was allowed for preparation for disposition in that hearing. The record shows that the hearing started at 10.05 that day, and at 10.05, Mr. Coleman didn't know that Mr. Abel existed. Mr. Abel was in the courtroom, but Mr. Coleman had a different counsel at that point, Mr. Gordon. The client wanted a different counsel, right? He did want a different counsel. Not a different counsel. Absolutely. He did get different counsel, but he didn't get adequate time to prepare for the hearing in this matter. Was that your client's own fault? Didn't Judge Hood offer him a continuance? Your honor, he did offer that the case be set off for a couple of days. It was already set for disposition a couple of days before then, and Judge Hood did offer that. But if this was just a matter of us discussing a continuance, I would agree that the defendant at least said, we might as well get it over with. He did say that at the hearing. But what we're talking about here is waiving the right to the assistance of counsel, which is different, and you can't waive that with an offhand statement. This court has said, and I cited the Hill v. Curtin case, that in order to waive the right to counsel, there needs to be an on-the-record probing inquiry so that the defendant understands what it is that he is waiving. In this case, an offhand comment of, we might as well get it over with, does not constitute... What's your principle of the boundary between what you say is waiving more time for preparation and waiving the complete assistance of counsel, assuming that we agreed with you that that's what it is? Well, the boundary has to be a look at what the role of counsel was at that hearing and what the role of counsel could have been at that hearing. And that's why, in effect, the defendant's waiver of asking for more time or setting it off until that Friday is irrelevant to the court's duty to make sure that the Sixth Amendment is upheld and defense counsel's duty to make sure that the Sixth Amendment is upheld in this case. And the part about the waiver or whatever, let's go ahead and do it, that comes after he's, in fact, consulted for 14 minutes or whatever. So it's not saying, let's do it, and then it's up to them how much time he has. He's had whatever conversation he appears to have wanted, and Judge Hood wasn't beating on them to hurry up and get back. That's absolutely true, Your Honor. But no counsel could have been prepared for that hearing in the amount of time that was given. And it was less than 14 minutes, Your Honor. The record shows that the hearing started at 10.05. We have four pages of transcript before Mr. Abel comes into the picture. So that's at least two to four minutes, let's say. So two to four minutes happens. Then there's this short break, and at 10.19, counsel is back on the record, and counsel is saying, well, we waive everything, we're pleading. Well, he says, I mean, it's not quite that casual. He says, do we want to have the final hearing next week? He's not pressing. Or do you want to go ahead and have it today? And the defendant, in his own words, says, I wanted to get it out of the way. And then the lawyer says, Mr. Coleman is ready to go forward today and get the matter completed. And then the hearing itself actually has a very extensive colloquy between the judge and the defendant on exactly the critical matters. Now, maybe Perry Mason or Kevin Shad could have helped him some, but pretty much what the fuss is about is laid out in the record. There's nothing much missing. Well, and that's why I raised it as opposed to raising it as an ineffective assistance claim, because it is clear in the record. But I would submit that there is the best counsel in the world could not have been prepared to handle the disposition of this case. The best counsel in the world couldn't have helped your client. I mean, he admitted to using cocaine and marijuana while on supervised release, right? I disagree on two matters, Your Honor. First, the word cocaine does not come up in the hearing at all until the end of the hearing when the judge makes an offhand comment about cocaine. The allegation about the use of cocaine was handed down that day. And it gets me back to my point. So we have this 10 to 12 minutes where counsel and the defendant communicate with each other. That's the off-the-record communication. It's the first time they meet. So in that 10 to 12 minutes, this new counsel would have met with his client, would have reviewed a brand-new addendum to a supervised release violation report that adds new charges, would have reviewed the file which was handed over to him in court by the prior counsel, would have reviewed a 24-page PSR that outlines the facts and figures about this particular defendant, determined with the defendant that he wanted to plead guilty that day, determined with the defendant what the mitigation of sentence was that day, and then got back on the record in that 10 to 12 minutes and adequately performed all of those functions. He's a speed reader. When you said he pled guilty that day, had he not pled guilty earlier? He actually, what's interesting about this is because there is an addendum to this supervised release violation report which occurs on that day, there has to be allegedly a new discussion about the new charges, right? How many pages was the addendum? The addendum that I have, the document that I have, which I think is under seal 60 or record 64, I think, is 10 pages. So that's 10 pages, and the PSR is 24 pages. Correct. I don't know how the lawyer could have read and digested all that and discussed it with his client in 14 minutes. When the case came back on the record, did the judge ask the lawyer, had he read and reviewed these documents and reviewed the contents of those documents with his client? The supervised release violation report, he asked him about that, but not the PSR. So that would have been another 24 pages he would have needed to have read and reviewed and discussed with his client. We're talking 10 to 12 minutes, Your Honor, that he would have had to have done that. And back, Judge Gilman, to your question, there was mitigation to argue in this case. If you go back through and you look at the PSR and you look at this client's criminal history, he's got a 1986 robbery. After that, there's a lot of public intoxication. There's a lot of, he's got three offenses that he gets four criminal history points for for stealing meat from Kroger. Those are some of his offenses that are like in the mid to early 2000s. There's no crimes of violence. There's nothing going on in the past 10 years of his life. And it's clear that he has a significant substance abuse issue. Now, that's what Mr. Coleman and the judge discussed in great length. The counsel absolutely deferred to the judge's knowledge of the case. There was no mitigation. There was no argument by counsel as to why this defendant should get a lower sentence. And keep in mind, Your Honors, what happened in this case was not only was the sentence imposed, but it was an upward variance from the guidelines range. Three months above the top end of the range. And only six months below the statutory maximum sentence. Just going back to what you said about the addendum, as I see, there's two addendums. One's dated July 27th, so that had already happened. And I'm sorry, I've got that backwards. So July 6th, there's like two and a half pages of text. The rest of it's a form. And July 27th, there's basically a page and a tick of text. Is that what we're talking about? Yes, Your Honor. But keep in mind, Mr. Abel wouldn't have had any of that prior to the hearing. So it's 10 pages to him. Oh, counting the forms. Well, and he asked for it. I mean, he says, and he actually says, he erroneously says there's probable cause to go forward on the allegations today. That's what counsel says, which isn't even the standard for disposition of a supervised release violation. It's to whether or not to hold a guy for a supervised release violation at the beginning of the charges. But there's no comment, there's no question as to, directly to Mr. Coleman, have you reviewed this new allegation about the cocaine and do you agree with it? I'll note that there is a reference to cocaine on page 10 back earlier in the place Judge Hood says you can win by not smoking marijuana, you can win by not doing cocaine. And I think I referenced that in my brief. But you had earlier said here that it didn't happen until the end. Okay. Well, I guess it's 17 pages and we're on page 10. What's your best case on the facts close to this that's in your client's favor? Can you cite me any case? Yes. United States v. Morris is the case that I largely rely on. In Morris, there was no waiver of the opportunity for a continuance, right? That is correct, Your Honor. It's a distinction, isn't it? is a right that is required to be borne by the judge in this case. The judge has to ensure that, number one, either defendant has the assistance of counsel or, number two, that he knowingly and voluntarily waives the right to counsel. Okay. So I think I sort of muttered this question and then I dropped it, but what in your view is the standard between counsel that you're waiving and no counsel? You think 14 minutes or 10 minutes is too little? Half an hour? One hour? Three hours? Well, there has to be enough time to do several things. I see my time is up. So in order to represent a client in a supervised release disposition, you have to have at least read the supervised release violation report. You've had to have read the PSR. You've had to discuss with the client whether or not he admits to the charges and whether he wants to go forward. You have to at least determine whether or not there's any mitigation to at least bring in front of the judge. That sounds like automatic half-day continuance. Absolutely, Your Honor. It should have not gone forward down that day. When you switch counsel. . . Full-day continuance. Yes. Absolutely. That's fair. I was just trying to get your answer on it. We'll see. Thank you, Your Honor. Your Honor. May it please the Court. My name is Dan Hancock. I represent the United States in this matter. The thing that we have to keep in mind, specifically with regard to Morris, is this isn't that type of case. Morris, you had a federal court reviewing state court proceedings in which the state court defense attorney had no federal practice and got the guideline range wrong, had to yell in the bullpen to talk to her client, surrounded by other defendants, other counsel, and then the judge demanded a plea or not that very day. That isn't this case. Here, after that recess, Judge Hood gave Mr. Coleman the option to defer the revocation hearing until the date that it had already been scheduled, almost a week later, and Mr. Coleman said he wanted to get it out of the way. Do you have any case that supports your position that this is okay? Well, frankly, I think Morris supports it in the sense that that is the kind of clear dividing line. Those are circumstances under which this is not okay. You don't have any case that says it's okay? There is no bright line case that says it's okay. And Mr. Shadd can't cite any case that says it's okay for his position either? I think that's the case, Your Honor. It's certainly not an unknown practice in state court. I don't know if this tends to happen in federal court, but to pull up a lawyer and give him 10 minutes, half an hour, whatever. Have you had any experience of this happening other times in federal court? Not. Although the constitutional standard would be the same, I suppose. And Mr. Shadd is sort of arguing, I take it, for a constitutional standard that you can't have, you can't waive without the FREDA waiver if you don't get a full day. Certainly. I'm not aware of another case on these exact sort of facts. I'm thinking not so much of cases, but is this a practice that you've seen happen or heard from your AUSAs in other districts where people get pulled up to be counsel on short notice? I don't believe it's a regular practice, no. However, I'm sorry. I didn't want to interrupt you. I was just going to ask you whether you think 14 minutes is enough time for the attorney to read and digest these documents, the addendum, the PSR, and to discuss the contents with the client and permit him to make an informed decision about what he wanted to do. I think in this case it is. As Judge Boggs pointed out, the violation report, even with the addendum, is only about five pages of text, and it sets out pretty clearly the violations for which the supervised release is being revoked. And then we have to look back at the circumstances. This is his second revocation on supervised release. He was released from incarceration in September of 2014. He was back before the court in November because he tested positive for cocaine. He was sentenced to six more months, and then he had three months of a substance abuse program. He got out of that. What's the significance of this being his second? I mean, this is not a career criminal who's in front of the court all the time, and he's back and forth these two times in large measure, seemingly because of the substance abuse problem, which the judge may have wanted, I would guess, to know quite a bit about to take into account as he fashioned the sentence. Well, that goes to what I was saying, is that this is a recurring problem with his abusing the or violating the conditions of a supervised release by taking drugs. He was in the substance abuse program for 90 days, and two days after coming out he admitted to cocaine and then he admitted to smoking marijuana, and then four days later he admitted to or he tested positive for cocaine. Then it might be altogether difficult for the judge to fashion an appropriate sentence that included treatment and rehabilitation and to consider the appropriate time for incarceration or whatever else he needed, and you would think he'd need an informed attorney to discuss those matters with the court and how he could get to know the client and formulate all that and read these documents and formulate all that in 14 minutes. I'm trying to figure out how that could be done. Well, I think that actually comes out in the colloquy between Mr. Coleman and the court after he's conferred with counsel, where Mr. Coleman says outright he went to the substance abuse program, but he wasn't required to go to any of the classes there, so he didn't. And Judge Hood really took that into account when he was discussing the factors on revocation, saying essentially, we're trying to help you and it's not working. For you to be helped, you have to want to be helped. So I think Judge Hood was evidence that he was familiar with the facts here and that he was considering those facts when he... Let me ask you this on the other area. The other claim by the defendant is that this was a procedurally unreasonable sentence, three months above the top end of the guideline range, where the district court gave no... Actually, he didn't discuss the relevant sentencing factors. He didn't explain what upward variance was warranted. How can you sustain the procedural reasonableness of this sentence? Well, I think even though he didn't explicitly list the factors and describe how these circumstances apply to those factors, he did describe just the nature of Mr. Coleman's conduct and how the fact that the supervised release program and the substance abuse program just simply weren't working for him. And I think that's what he took into account when... I think that's what the record shows. What case supports your position that this is okay on an above-guideline sentence with no explanation given? What case can you cite me that supports that? I don't have a case for that in front of me, Your Honor. How about Zobel? Are you familiar with the Zobel case? This is plain error review. It is. Wouldn't that help you some? I believe it would. Other than coaching from Judge Boggs, anything else you can cite? I will accept the coaching where it got a good source. There is back and forth. There's Blackie and so on, but Zobel is the most recent on, I think, on plain error review where the judge knows what the range is. Let me ask you this. Your adversary said he wasn't going to bring this as ineffective assistance, which I may ask him why and so on, but if this were brought as ineffective assistance, because that seems to be what some of the questions, you know, how could any lawyer do well enough, how would you respond if we were looking at it as ineffective assistance? I think you'd have to look at whether the second prong was met, that the outcome would have actually been any different, and, frankly, I don't think it would have. The justification for the sentence here is the recurring drug use. Like I said, as soon as he got out of that substance abuse program, he's right back to using drugs, and while that's unfortunate, there's not a lot that the court can do about that if he doesn't want to be helped, and there's not a lot that defense counsel can do on a preponderance of the evidence standard, which is the standard for revocation, when he's admitted to smoking marijuana and tested positive for cocaine. There was only so much that defense counsel could do in this situation, and I think by at least arguing that he has a drug problem, and I hope the court will take that into account, frankly, I think that's the limit of what he could practically have done given the circumstances, and he there is Mr. Abel. Thank you, Your Honor. Chad, you might discuss the IAC, and also with respect to the second point, Judge Hood had simply said the range is 21 to 27, we've talked about your problems, and I think because of them I'm going to give you 30. Would that have been enough? Well, no, you have to discuss the 3553A, you at least have to acknowledge those factors. Well, you don't have to tick them off. The case law says you don't have to tick them off one by one, but you have to at least show that you're, as a sentencing court, that you are considering them in your disposition of the case. And Judge Hood just didn't think about such things, that he's only been there for 30 years. Well, Your Honor, the difference between, you cited to the Zobel case, the difference between this case and Zobel is that Zobel had an attorney, and that makes a huge difference in the case. Mr. Abel was his attorney. Mr. Abel was present in court and attorney of record, that is correct, Your Honor. And it gets me back to the issue and why this is a constructive denial of counsel issue and not the way that we're looking at it, right? Because the Sixth Amendment says that you have the right to counsel who will take the case and subject it to meaningful adversarial testing. That's what we demand. The point is, he was given that right, and he was given the right to have a continuance, and your client said he didn't want it. Now, how did we get around that? Your Honor, my client never said he didn't want counsel. No, but he was willing to proceed with his short-term counsel without giving his counsel more time to think about it. And it's not that. Are you claiming your client is insane or incompetent? No. But the denial of counsel in a supervised release proceeding is not up to whether or not a defendant wants a continuance or not. It's whether or not he knowingly and voluntarily waives the Sixth Amendment right to counsel, which was not done in this case. You can't say his... That takes us back to your starting that on the premise that he didn't really have counsel. Now, the counsel was there, and, of course, the counsel could have said, I need more time. And should have. And that's what makes it seem like ineffective assistance. But there are two players here. There are two players that are bound by the Constitution to protect the Sixth Amendment in this case, and that is the defense counsel and that is the district court judge. They are both bound to protect the Sixth Amendment that wasn't done in this case. So the client was not sufficiently familiar with the standard of practice or the legal requirements to make an informed decision or to be aware that his alleged lawyer was not acting to professional standards, that he wouldn't have been tutored enough in legal parlance to realize that. I would agree with that. And we don't know because there was no Ferretta hearing done. But let me finally say as to the second issue, Judge Gilman, that you had asked about, if you find the sentences procedurally unreasonable in this case, it solves my Sixth Amendment problem. That would be convenient. It would be. And we will take it how we can get it. So then we'd go back to Judge Hood to see if he gives them the extra three months. I will personally call whoever the new counsel is to make sure they look at the record. And your position, obviously, is that the record is sufficiently fully developed that we can dispose of this on direct appeal. We don't have to put this off for habeas. Absolutely. The numbers just can't add up that we would submit that this is effective assistance or that this is the assistance of counsel in this time frame. Leave the word effective out. Yes, absolutely. Thank you, Your Honor. Case will be submitted.